860 So.2d 10 (2003)
The BOARD OF COMMISSIONERS OF BREVARD, etc., Appellant,
v.
BARBER BONDING AGENCY, Appellee.
No. 5D02-3174.
District Court of Appeal of Florida, Fifth District.
September 26, 2003.
Rehearing Denied November 24, 2003.
Clifford Repperger, Jr., Assistant County Attorney, Viera, for Appellant.
Robert R. Berry of Eisenmenger, Berry & Peters, P.A., Melbourne, for Appellee.
PLEUS, J.
The Board of County Commissioners of Brevard County (County) appeals from an order which granted Barber Bonding Agency's (Barber) motion for remission of 90% of its forfeited bail bond, pursuant to section 903.28(4), Florida Statutes. The County concedes that Barber is entitled to remission under the statute, but it argues the applicable subsection is (6), which permits remission of up to 50% of the forfeited bond. We agree with the able trial judge that subsection (4) applies and affirm the order for remission of 90%.
Section 903.28, Florida Statutes, deals with remission of forfeited bail bonds. Its subsections (2) through (6) are worded identically except for the time periods [90 days, 180 days, 270 days, 1 year and 2 years] and the corresponding maximum amount which can be remitted to the surety for a forfeited bond [100%, 95%, 90%, 85% and 50%].
Section 903.28(4) provides:

If the defendant surrenders or is apprehended within 270 days after forfeiture, the court, on motion at a hearing upon notice having been given to the county attorney and state attorney as required in subsection (8), shall direct remission of up to, but not more than, *11 90 percent of a forfeiture if the surety apprehended and surrendered the defendant or if the apprehension or surrender of the defendant was substantially procured or caused by the surety, or the surety has substantially attempted to procure or cause the apprehension or surrender of the defendant, and the delay has not thwarted the proper prosecution of the defendant. In addition, remission shall be granted when the surety did not substantially participate or attempt to participate in the apprehension or surrender of the defendant when the costs of returning the defendant to the jurisdiction of the court have been deducted from the remission and when the delay has not thwarted the proper prosecution of the defendant.

(Emphasis added)
Section 903.28(6) has identical language except the time limit is two years and the maximum possible remission is 50%.
The facts in this case are not in dispute. Barber posted a $1,000.00 bail bond for McCloy on September 8, 2000, in a criminal case being prosecuted in the Circuit Court of Brevard County. On January 26, 2001, when McCloy failed to appear, the court forfeited the bond. Barber paid the forfeiture on March 28, 2001.
On August 6, 2001, McCloy was arrested in Dade County, Florida, on different criminal charges than those involved in the Brevard County case. Barber apparently played no part in his apprehension and arrest in Dade County.[1] McCloy remained in the Dade County jail until June 14, 2002, when he was transferred to Brevard County to face the criminal charges underlying this bail bond matter. Barber paid the state's expenses and costs to return McCloy to Brevard County.
The state agreed in its answer that the prosecution of the case against McCloy had not been thwarted by his failure to appear. Indeed, at the hearing held on Barber's motion for remission, the assistant state attorney appeared with the assistant county attorney for the purpose of working out a guilty plea for McCloy. The state did not present any argument that the delay in returning McCloy to the Brevard Circuit Court had impeded the prosecution of the case against McCloy in any way. Thus, the requirement of the statute (that the delay has not thwarted the prosecution of the case) was satisfied and is not in issue here.[2]
At the hearing on remission, the County argued that inherent in the language of all of the subsections to section 903.28 is the requirement that the defendant be surrendered to or apprehended in the jurisdiction of the court which approved and forfeited the bond, so that it could be said that the defendant has been returned to "justice," and the status quo breached by the defendant's skipping the jurisdiction has been cured. Thus, since McCloy was not returned to Brevard County until more than one year later, but less than two years since the bond forfeiture, subsection (6) controls and limits the remission to 50%. We disagree.
Parties' rights and remedies regarding discharge of forfeited bonds and remission of part or all of the funds forfeited are currently governed by statutes and the courts are limited by their provisions. Leon County v. Aloi-Williams Bonding *12 Agency, 652 So.2d 464 (Fla. 1st DCA 1995); Accredited Sur. & Cas. Co. v. Putnam County, 528 So.2d 430 (Fla. 5th DCA 1988); Accredited Sur. and Cas. Co. v. State, 418 So.2d 378 (Fla. 5th DCA 1982). Courts say that such statutes should be construed liberally to favor sureties, since justice does not favor forfeiture.[3] Liberal interpretation of such statutes in favor of sureties (1) saves the state the expense and burden of keeping an accused in jail pending trial; (2) promotes an accused's liberty interest consistent with the presumption of innocence; and (3) provides incentives to sureties to offer bails bonds and to pursue those who flee the jurisdiction. See County Bonding Agency v. State, 724 So.2d 131 (Fla. 3d DCA 1998); Leon County.
Surety Continental Heritage Insurance Co. v. Orange County, 798 So.2d 837 (Fla. 5th DCA 2001) provides precedent for the view that section 903.28 only requires that an absconding accused be arrested or apprehended in a different jurisdiction to stop the running of the times in the statute. In that case, a surety located two absconding defendants in Jamaica, caused their arrest, and had done all it could to set in motion extradition proceedings there. However, the authorities in the bailing jurisdiction refused to issue an arrest warrant or to initiate extradition proceedings. The surety filed a motion for remission pursuant to section 903.28 approximately one year after forfeiture of the bail bonds. This court held that the surety was entitled to relief under the remission statute because the surety had substantially attempted to procure the defendant and the state had prevented his being returned to the court's jurisdiction by the state's failure to cooperate. See also County Bonding Agency (dictum).
In cases in which the prosecution has not been thwarted by the defendant's failure to appear, we hold that the time of the surrender or apprehension of the skipping defendant stops the times running in section 903.28, without regard to whether the apprehension or surrender is in a different or even foreign jurisdiction, or for different criminal charges. Since McCloy was arrested in Dade County within 270 days after the bond was forfeited, subsection (4) applies and allows a maximum remission of 90%.
AFFIRMED.
PALMER, J., concurs.
SHARP, W., dissents, with opinion.
SHARP, W., J., dissenting.
I respectfully dissent because I think that the language of section 903.28(4), the remission statute, is susceptible to more than one interpretation,[1] and in my view, the better interpretation is that the surrender or apprehension of the absconding defendant does not stop the running of the time periods in the remission statute where the apprehension or surrender is in a different or foreign jurisdiction, until he or she is returned to the custody and jurisdiction of the bailing court.
Section 903.28, Florida Statutes, deals with remission of forfeiture of bail bonds. Its subsections (2) through (6) are worded identically except for the time periods [90 days, 180 days, 270 days, 1 year and 2 years] and the corresponding maximum *13 amount which can be remitted to the surety for a forfeited bond [100%, 95%, 90%, 85% and 50%].
Section 903.28(4) provides:

If the defendant surrenders or is apprehended within 270 days after forfeiture, the court, on motion at a hearing upon notice having been given to the county attorney and state attorney as required in subsection (8), shall direct remission of up to, but not more than, 90 percent of a forfeiture if the surety apprehended and surrendered the defendant or if the apprehension or surrender of the defendant was substantially procured or caused by the surety, or the surety has substantially attempted to procure or cause the apprehension or surrender of the defendant, and the delay has not thwarted the proper prosecution of the defendant. In addition, remission shall be granted when the surety did not substantially participate or attempt to participate in the apprehension or surrender of the defendant when the costs of returning the defendant to the jurisdiction of the court have been deducted from the remission and when the delay has not thwarted the proper prosecution of the defendant. (emphasis added)
Section 903.28(6) has identical language except the time limit is two years and the maximum possible remission is 50%.
The County conceded that Barber is entitled to remission under the statute, but it argues the applicable subsection is (6), which permits remission of up to 50% of the forfeited bond rather than up to 90%.
The issue presented in this case is one of first impression in the State:
MUST A DEFENDANT BE APPREHENDED OR SURRENDERED TO THE JURISDICTION OF THE COURT WHICH APPROVED THE BAIL BOND, WHICH IS FORFEITED DUE TO THE DEFENDANT'S FAILURE TO APPEAR, IN ORDER TO STOP THE TIMES RUNNING, UNDER THE REMISSION STATUTE, AS ARGUED BY THE COUNTY, OR DO THE TIMES STOP RUNNING WHEN THE DEFENDANT IS APPREHENDED OR SURRENDERED IN A DIFFERENT COURT'S JURISDICTION, WITHOUT REGARD TO WHEN THE DEFENDANT IS RETURNED TO THE JURISDICTION OF THE COURT WHICH APPROVED THE BAIL BOND, AS ARGUED BY BARBER?
The facts in this case are not in dispute. Barber posted a $1,000.00 bail bond for McCloy on September 8, 2000, in a criminal case being prosecuted in the Eighteenth Judicial Circuit for Brevard County, Florida. On January 26, 2001, when McCloy failed to appear, the court forfeited the bond. Barber paid the forfeiture on March 28, 2001.
On August 6, 2001, McCloy was arrested in Dade County, Florida, on different criminal charges than those involved in the Brevard County case. The surety (Barber) apparently played no part in his apprehension and arrest, in Dade County.[2] McCloy remained in the Dade County jail until June 14, 2002, when he was transferred to Brevard County by the State to face the criminal charges underlying this bail bond matter. The record does not show why McCloy remained in the Dade County Jail for more than eleven months after his arrest in Dade County nor whether *14 Barber tried to get him transferred back earlier to Brevard County, and was prevented from doing so by the State or County. Barber apparently played a part in obtaining the transfer of McCloy to Brevard County and it paid the State's expenses and costs to return McCloy to Brevard County.
The State agreed in its answer that the prosecution of the case against McCloy had not been thwarted by his failure to appear. Indeed, at the hearing held on Barber's motion for remission, the Assistant State Attorney appeared with the Assistant County Attorney for the purpose of working out a guilty plea for McCloy. He did not present any argument that the delay in returning McCloy to the Brevard Circuit Court had impeded the prosecution of the case against McCloy in any way. Thus, the requirement of the statute (that the delay has not thwarted the prosecution of the case) was satisfied and is not disputed here.[3]
At the hearing on remission, the lawyers representing Barber and the County presented different possible interpretations of section 903.28, as applied to the facts of this case. The County argued that inherent in the language of all of the subsections to section 903.28 is the requirement that the defendant be surrendered to or apprehended in the jurisdiction of the court which approved and forfeited the bond, so that it could be said that the defendant has been returned to "justice," and the status quo breached by the defendant's skipping the jurisdiction has been cured. Thus, since McCloy was not returned to Brevard County until more than one year later, but less than two years since the bond forfeiture, subsection (6) controls and limits the remission to 50%.
Barber argued that it is not relevant when a skipping defendant is actually returned to the jurisdiction of the court which approved the forfeited bond, but rather the time of the surrender or apprehension of the skipping defendant stops the times running in section 903.28, without regard to whether the apprehension or surrender is in a different or even foreign jurisdiction, or for different criminal charges. Thus, Barber reasons, since McCloy was arrested in Dade County within 270 days after the bond was forfeited, subsection (4) applies, and allows a maximum remission of 90%.
Parties' rights and remedies regarding discharge of forfeited bonds and remission of part or all of the funds forfeited are currently governed by statutes and the courts are limited by their provisions. Leon County v. Aloi-Williams Bonding Agency, 652 So.2d 464 (Fla. 1st DCA 1995); Accredited Surety & Casualty Co. v. Putnam County, 528 So.2d 430 (Fla. 5th DCA 1988); Accredited Surety and Casualty Co., Inc. v. State, 418 So.2d 378 (Fla. 5th DCA 1982). See also People v. Goldsmith, 955 P.2d 561 (Colo.App.1997). Courts say that such statutes should be construed liberally to favor sureties, since justice does not favor forfeiture.[4]
Liberal interpretation of these statutes in favor of sureties promotes the administration of justice, since bail places the defendant in the protective custody of a surety, to insure his or her presence for trial, thereby saving the State the expense and burden of keeping an accused in jail pending trial, and it also promotes an accused's *15 liberty and freedom, consistent with the presumption of innocence. Further, in order to promote and encourage sureties to write bonds, they must be given incentives to enter into bail contracts, and to go after and bring back to justice any accused who flees the jurisdiction. See County Bonding Agency v. State, 724 So.2d 131 (Fla. 3d DCA 1998); Leon County; County Bonding Agency v. State, 724 So.2d 131 (Fla. 3d DCA 1998). See also State v. Amador, 98 N.M. 270, 648 P.2d 309 (1982).
Comparing Florida's statutes over time concerning discharge of a forfeited bail bond and remission of funds paid under specified circumstances, it is clear the Legislature has increasingly liberalized the conditions under which sureties may seek relief from forfeited bail bonds. For example, the 1970 version of the applicable statute, section 903.28 provided:
After the payment of the forfeiture, the court before which the case is pending may, for reasonable cause shown, within one year of the date of forfeiture, direct a remission of forfeiture in whole or in part, upon such terms as are just; and shall direct a remission of forfeiture if it shall appear there was no breach of the undertaking of the defendant was at the time of required appearance adjudicated insane and confined in an institution or hospital, or confined in a jail or prison for a felony, provided however, if the bail bondsman or his surety company shall apprehend the defendant whose failure to appear or to fulfill his bond contract which resulted in the forfeiture of the undertaking and cause him to be returned to the custody of the official in whose custody he was at the time bail was taken or an official into whose custody he would have been given had he been committed, within one year from the date of forfeiture, said forfeiture shall be refunded, except where the trial court shall find that the failure to sooner apprehend or return the defendant has defeated the ends of justice and thwarted the successful prosecution of the defendant. (emphasis added)
The part of the 1970 statute italicized above, which corresponds with the current section 903.28, required the surety to actually apprehend the defendant and return him to the custody of the applicable county jail or institution, within one year of the bond forfeiture. In 1982, this statute was substantially revised. Portions of the 1970 statute dealing with discharge of a forfeiture were moved to section 903.26. Portions dealing with remission of a forfeiture were placed in a revised section 903.28, containing subsections similar to the current version. However, the 1982 version had less liberal time limits (one year maximum) and smaller percentages of maximum remission recoverable than the current statute.
For example, under the 1982 version of subsection (4), if a defendant was surrendered or apprehended within 270 days after forfeiture, the maximum remission permitted was 60% of the forfeited bond. And, in the current version of the statute, unlike the 1982 statute, sureties who do not substantially participate in or attempt to participate in the apprehension or surrender of the defendant, are provided a remedy if the costs of returning the defendant to the jurisdiction of the court are deducted from the remission amount.[5]
The question here is whether the Legislature intended to further liberalize remedies for the sureties after forfeiture of a *16 bail bond, to require only that an absconding accused be surrendered or apprehended in some other jurisdiction within the time limits set forth in the current statute, or that he or she must be returned to the jurisdiction of the bailing court within those time periods. In general, most courts take the view that the incarceration of an absconding defendant, after forfeiture of a bail bond in a different jurisdiction on different criminal charges, does not suffice to grant the bonding company relief from forfeiture or remission.[6] However, some recent cases have granted relief.[7] Because of the terms of the remission statute in Florida, Florida is among those states permitting some relief for a bail bond forfeiture for the surety under these circumstances, provided the conditions set forth in the statute are met. The relevant question here is how much relief the surety is entitled to?
Barber argues that Surety Continental Heritage Ins. Co. v. Orange County, 798 So.2d 837 (Fla. 5th DCA 2001) provides precedent for the view that section 903.28 only requires that an absconding accused be arrested or apprehended in a different jurisdiction to stop the running of the times in the statute. In that case, a surety located two absconding defendants in Jamaica, caused their arrest, and had done all it could to set in motion extradition proceedings there. However, the authorities in the bailing jurisdiction refused to issue an arrest warrant or to initiate extradition proceedings. The surety filed a motion for remission pursuant to section 903.28 approximately one year after forfeiture of the bail bonds. This court held that the surety was entitled to relief under the remission statute because the surety had substantially attempted to procure the defendant and the State had prevented his being returned to the court's jurisdiction by the State's failure to cooperate. See also County Bonding Agency (dictum).
The result in the Surety Continental Heritage case is consistent with many other cases in which actions taken by the bailing State's officials have prevented a surety from returning a defendant to the bailing court's jurisdiction.[8] The question as to which subsection of section 903.28 or applicable time limit should apply in that case was not at issue. This court said the remission statute should apply because the surety had filed its motion for remission "approximately one year" after forfeiture. However, the court gave as its reason for providing relief to the surety the fact that the principals "would have been apprehended and returned to justice, but for the State's refusal to extradite." (emphasis supplied). Return of the absconding accused to the jurisdiction of the bailing court or its equivalent, was the requisite fact for remission and also the triggering fact in determining which subsection or time limit was applicable.
In this case, the record provides no basis to conclude that the State or County impeded or delayed McCloy's return to the jurisdiction of the bailing court. Nor did Barber make that argument below. As noted above, McCloy lingered in the Dade County Jail a substantial period of time *17 before being returned to Brevard County for reasons unknown. To come within the ambit of the rule of law established by the Surety Continental Heritage case, I think Barber had the burden to show that the delay was attributable to State or County officials, and but for their actions, McCloy would have been returned to Brevard at an earlier time, which would then be the triggering time to determine which subsection of 903.28 was applicable.[9] Absent those proofs, the time periods set forth in section 903.28 should be determined based on when the defendant was returned to the jurisdiction of the bailing court. See Wiley v. State, 451 So.2d 916 (Fla. 1st DCA 1984).
In Leon County, a defendant was arrested and posted bond on September 21, 1991. He failed to appear in county court and the bond was estreated. The defendant left the country and resided in India. But on March 23, 1993, the defendant voluntarily surrendered to Leon County authorities. All of the statutory conditions for remission of the forfeited bond in that case were met, and the issue was whether the bailing court had the power or discretion to remit the full amount of the bond since defendant surrendered himself to the county jail more than one year, but less than two years, after forfeiture.
The first district concluded the bailing court was bound by subsection 903.28(6) and could only remit a maximum of 50% of the forfeited bond, pursuant to the provisions of that subsection. It described the statutory scheme of section 903.28 as having been designed by the Legislature:
[T]o encourage the expeditious apprehension or surrender of a defendant, in that a statutory graduating scale calculates the percentage of the forfeiture remittable according to the amount of time that has passed after forfeiture, until a defendant is returned to justice.

(emphasis added)
652 So.2d 466.
In order to be "returned to justice" an absconding defendant must be returned to the jurisdiction of the bailing court to face those charges for which the bond was set. Barber argues that the time limits in section 903.28 reference the time that an absconding defendant either surrenders him or herself to police authorities or is apprehended by them, without regard to where the apprehension or surrender occurs, or when he or she is returned to the bailing court's jurisdiction to face the pertinent criminal charges.
This interpretation could lead to strange results. For example, a defendant could be arrested in a foreign country or other state and held there many years on other criminal charges before being returned to the bailing court or "to justice." To allow remission under section 903.28 based on the time he or she was arrested in another jurisdiction does not comport with a policy of encouraging the expeditious apprehension or surrender of an absconding defendant and bringing him or her "to justice."
Section 903.26(5) "Forfeiture of the Bond; ..." deals with conditions under which a bond forfeiture can be discharged. It includes a provision that if discharge is sought within 60 days of the forfeiture, a determination that at the time of the required appearance the defendant was adjudicated insane and confined in an institution or hospital or was confined in a jail or prison permits a discharge.[10] This releases of the surety for situations involving "impossibility of performance."
*18 But section 903.26(5) also contains a provision similar to those in 903.28:
(5) The court shall discharge a forfeiture within 60 days upon:
* * *
(c) Surrender or arrest of the defendant if the delay has not thwarted the proper prosecution of the defendant. If the forfeiture has been before discharge, the court shall direct remission of the forfeiture. The court shall condition a discharge or remission on the payment of costs and the expenses incurred by an official in returning the defendant to the jurisdiction of the court. (emphasis added)
All of the cases I have found which were decided under this provision involve situations where the absconding defendants were returned to the jurisdiction of the bailing court within the required time limit set by the statute, measured by the span of time between forfeiture and return to the court's jurisdiction. See Easy Bail Bonds v. Polk County, 784 So.2d 1173 (Fla. 2d DCA 2001); Rubin S. Williams Bailbonds, Inc. v. State, 493 So.2d 1065 (Fla. 1st DCA 1986); Morra v. State For Use and Benefit of Monroe County, 460 So.2d 507 (Fla. 3d DCA 1984). Section 903.28 should have a consistent interpretation.
Therefore, I would reverse, but certify as a question of public importance[11] to the Florida Supreme Court the question of first impression stated at the beginning of my dissenting opinion.
NOTES
[1] At the hearing below, the surety offered to present evidence on this matter, but the trial court declined to hear it on the ground that it was not relevant and would make no difference under the wording of the subsection.
[2] See Surety Continental Heritage Ins. Co. v. Orange County, 798 So.2d 837 (Fla. 5th DCA 2001).
[3] Leon County v. Aloi-Williams Bonding Agency, 652 So.2d 464 (Fla. 1st DCA 1995); Accredited Sur. and Cas. Co., v. State, 418 So.2d 378 (Fla. 5th DCA 1982); 8A Am.Jur.2d Bail and Recognizance § 125.
[1] I too agree with the majority that this trial judge, and all of our trial judges, are "able," but I respectfully differ in my interpretation of the statute.
[2] At the hearing below, the surety offered to present evidence on this matter, but the trial court declined to hear it on the ground that it was not relevant and would make no difference under the wording of the subsection.
[3] See Surety Continental Heritage Ins. Co. v. Orange County, 798 So.2d 837 (Fla. 5th DCA 2001).
[4] Leon County v. Aloi-Williams Bonding Agency, 652 So.2d 464 (Fla. 1st DCA 1995); Accredited Surety and Casualty Co., Inc., v. State, 418 So.2d 378 (Fla. 5th DCA 1982); 8A Am. Jur.2d Bail and Recognizance § 125.
[5] Compare, Accredited Surety & Casualty Co., Inc. v. Putnam County, Fla., 528 So.2d 430 (Fla. 5th DCA 1988).
[6] See Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1872); Pinellas County v. Robertson, 490 So.2d 1041 (Fla. 2d DCA 1986); 98 N.M. 270, 648 P.2d 309, 33 A.L.R.4th 656; Bail: Effect on Surety's Obligation Under Bail Bond of Principal's Incarceration in Other Jurisdiction, 33 A.L.R.4th 663.
[7] See Annotation BailLater Jailing, 35 A.L.R.4th 1192; 8A Am.Jur.2d 92 Arrest and Confinement of Accused; Same Offense; Extradition.
[8] See Public Service Mutual Ins. Co. v. State, 135 So.2d 777, 779 (Fla. 1st DCA 1961); 8A Am Jur.2d Bail and Recognizance § 132.
[9] See Public Service Mutual Ins. Co. v. State, 135 So.2d 777 (Fla. 1st DCA 1961).
[10] See Dolly Bolding Bail Bonds v. State, 787 So.2d 73 (Fla. 2d DCA 2001).
[11] Fla. R.App. P. 9.030(2)(A)(v).